# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**UNITED STATES OF AMERICA**                                                         **PLAINTIFF**

v.                                                        Case No. 4:19-CR-0441-LPR

**DERRICK FRAZIER**                                                                                     **DEFENDANT**

## ORDER

On August 7, 2019, a grand jury charged Defendant Derrick Frazier with one count of felon in possession of a firearm.[1] On October 24, 2019, Federal Public Defender Blake Byrd was appointed to represent Mr. Frazier.[2] The same day, Mr. Frazier entered an initial plea of not guilty to the felon-in-possession crime charged in the Indictment.[3] On June 3, 2021, Mr. Frazier returned to court and changed his plea to guilty.[4] Mr. Frazier was then remanded to the custody of the United States Marshal Service pending sentencing.[5]

On September 8, 2021, Mr. Byrd notified the Court that "the entire Federal Defender office" was conflicted out of the case because Mr. Frazier may need Mr. Byrd to testify in the future.[6] Specifically, Mr. Byrd says that he gave Mr. Frazier some bad legal advice. Mr. Byrd says that he incorrectly told Mr. Frazier that the Armed Career Criminal Act—and its significant sentencing enhancements—would not apply to Mr. Frazier's case.[7] Mr. Byrd moved to withdraw as counsel so that he could be a witness on Mr. Frazier's behalf moving forward, and asked the

---

[1] Indictment (Doc. 1) (charging a violation of 18 U.S.C. § 922(g)(1)).

[2] Order (Doc. 10).

[3] Clerk's Mins. (Doc. 11).

[4] Clerk's Mins. (Doc. 51); Plea Agreement (Doc. 52).

[5] Clerk's Mins. (Doc. 51).

[6] Mot. to Withdraw & Substitute Appointed Counsel (Doc. 55) ¶¶ 1–2.

[7] Ex 1 (Byrd Aff.) to Def.'s Mot. to Withdraw Guilty Plea (Doc. 58-1) ¶¶ 9, 12–15.

Court to appoint a new defense attorney for Mr. Frazier.[8]  The Court granted Mr. Byrd's request to withdraw as counsel and appointed Jordan Tinsley to represent Mr. Frazier.[9]  Mr. Frazier, with the benefit of new counsel, has decided that he would like to withdraw his guilty plea and go to trial.[10]  Whether he can withdraw his plea is an open question at this point.

And so we come to the Motion at issue in this Order.  Mr. Frazier says that he needs the Court to authorize a competency evaluation.[11]  He wants this evaluation to be performed by Dr. Hugo Morais of Little Rock.[12]  And he wants Dr. Morais to conduct the evaluation at Mr. Frazier's place of confinement, currently the Pulaski County Detention Center in Little Rock.[13]  Mr. Frazier gives three reasons why, in his view, such an evaluation is necessary.  First, the evaluation could be relevant to his Motion to Withdraw Guilty Plea.[14]  Second, if his plea is withdrawn, an evaluation can provide evidence from which Mr. Frazier could argue that he is not criminally culpable.[15]  Third, a mental evaluation may reveal mental-illness evidence that "will be highly relevant to any sentence imposed by this Court, should Mr. Frazier fall short in his effort to withdraw his guilty plea."[16]

Mr. Frazier needs the Court's permission to obtain a competency evaluation because he can't afford to pay for one himself.[17]  Congress, through the Criminal Justice Act of 1964, has

---

[8] *Id.* ¶¶ 23–24; Mot. to Withdraw & Substitute Appointed Counsel (Doc. 55).

[9] Order (Doc. 56).

[10] Def.'s Mot. to Withdraw Guilty Plea (Doc. 58).

[11] Def.'s Mot. for Mental Evaluation (Doc. 61).

[12] *Id.* ¶¶ 14–15.

[13] *Id.* ¶ 13 & n.2; Def.'s Reply in Supp. of Mot. for Mental Evaluation (Doc. 65) ¶ 10.

[14] Def.'s Mot. for Mental Evaluation (Doc. 61) ¶¶ 2–3, 9.

[15] *See id.* ¶¶ 5, 8–9.

[16] *Id.* ¶ 4.

[17] *Id.* at 4 n.1.

instructed courts to "authorize [appointed] counsel to obtain" "services necessary for adequate representation . . . ."[18]  And the Court doesn't have any hesitation agreeing with Mr. Frazier that a mental health evaluation is "necessary for adequate representation" in this case.  But one thing does give the Court some pause: Another federal law creates a different way for Mr. Frazier to obtain an evaluation.  Under 18 U.S.C. § 4241(a), the Court can order "a hearing to determine the mental competency of the defendant."  In furtherance of that hearing, the Court would "order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court . . . ."[19]  Mr. Frazier would likely have to be transported to a federal facility for the evaluation.  And the resulting report would be shared with both parties.[20]  Still, the availability of a government-provided evaluation raises the question: Is it "necessary" that the evaluation be conducted locally by a physician of Mr. Frazier's choice?

The fact that an evaluation is available under § 4241 does not preclude a defense-expert evaluation under the CJA.  Numerous courts, including the Eighth Circuit, treat the defense-expert evaluations under the CJA as separate from and in addition to the evaluations provided by § 4241.[21]  And that makes sense, given the significantly different roles the two evaluations play.  A § 4241 evaluation is meant to avoid the constitutional error of making an incompetent defendant stand trial.[22]  That evaluation can be initiated by the Government, the defense, or even the Court because

---

[18] 18 U.S.C. § 3006A(e)(1).

[19] *Id.* § 4241(b).

[20] *Id.* §§ 4241(b), 4247(c).

[21] *See, e.g.*, *United States v. Thornburg*, 676 F.3d 703 (8th Cir. 2012); *United States v. Williams*, 998 F.2d 258, 265–66 (5th Cir. 1993); *United States v. Rinchack*, 820 F.2d 1557, 1563–66 (11th Cir. 1987); *United States v. Paredes*, 44 F. App'x 202, 203 (9th Cir. 2002) (unpublished); *United States v. Phillips*, 907 F.2d 151, at 2 (6th Cir. 1990) (unpublished) ("Psychiatric exams performed under §§ 4241 and 4242 do not obviate the need for an independent evaluation because the experts serve different roles.").

[22] *See United States v. Turner*, 644 F.3d 713, 724–25 (8th Cir. 2011).

everyone involved has an interest in avoiding such an error.[23]  A CJA mental evaluation is different.  The CJA at least somewhat evens the adversarial playing field between an indigent defendant and the well-resourced Government. The CJA operates to give defendants an opportunity to put up a strong case, including by obtaining a favorable expert-witness opinion.[24]  Accordingly, the Court concludes that Mr. Frazier's request for a mental evaluation is properly brought under the CJA.  And the Court approves the retention of a mental-health expert for this purpose.

Mr. Frazier estimates that the evaluation and report will cost approximately $4,400.[25]  The estimate doesn't include the possibility that the expert witness may have to testify at future hearings or trial.[26]  That's a bit pricey: The CJA generally caps court-authorized expenditures of this nature at $2,700.[27]  But it can be hard to get an expert witness for an evaluation like this one at the default price cap.  Recognizing as much, the CJA allows courts to approve expenditures in excess of $2,700 when they are "necessary to provide fair compensation for services of an unusual character or duration, and the amount of the excess payment is approved by the chief judge of the circuit."[28]  This Court is convinced that approximately $4,400 is "necessary to provide fair compensation" under these circumstances.  Mr. Frazier's counsel has provided a reasonable basis for suspicion that Mr. Frazier might suffer from a severe mental illness.  If he does, that mental

---

[23] 18 U.S.C. § 4241(a); *see also Turner*, 644 F.3d at 724–25.

[24] *See Phillips*, 907 F.2d 151, at 2 (unpublished) (noting that a physician "appointed under § 4241 is the court's witness," while a § 3006A(e) expert "can assist the defense and need not report his conclusions to the court before trial" (citing *United States v. Bass*, 477 F.2d 723, 725–26 (9th Cir. 1973)).

[25] Def.'s Mot. for Mental Evaluation (Doc. 61) ¶ 15.

[26] *Id.*

[27] 18 U.S.C. § 3006A(e)(3) provides for a maximum amount of $2,400.  But § 3006A(e)(5) says that amount increases periodically based on "the percentage of the cumulative adjustments taking effect . . . in the rates of pay under the General Schedule . . . ."  The current maximum amount is $2,700.  *See* U.S. Courts, CJA Guidelines, § 310.20.10(A), https://www.uscourts.gov/rules-policies/judiciary-policies/cja-guidelines/chapter-3-ss-310-general#a310_20.

[28] 18 U.S.C. § 3006A(e)(3).

illness could have had a significant impact on Mr. Frazier's ability to competently plead guilty. It also may be extremely relevant to questions respecting Mr. Frazier's criminal culpability and an appropriate sentence. Mental-health evaluations of the type needed can qualify as "services of an unusual character" that warrant an upward deviation from the CJA expenditure limits.[29] Once the services are provided, and Mr. Tinsley submits a voucher or other itemized application, the Court intends to approve up to $4,400. Of course, that's not the end of the matter—Chief Judge Smith must also approve the expenditure on the back end.[30]

    IT IS SO ORDERED this 13th day of December 2022.

                                                _____
                                                LEE P. RUDOFSKY
                                                UNITED STATES DISTRICT JUDGE

---

[29] *See Foy v. United States*, 285 F.R.D. 407, 410–11 (N.D. Iowa 2012) (authorizing a habeas petitioner's request for a $6,640 psychological evaluation); *United States v. Dallas*, No. 8:06-cr-78, 2007 WL 1362919, at 1 (D. Neb. Apr. 19, 2007) (approving $5,010 for the already-rendered services of a psychiatrist in connection with a competency hearing).

[30] 18 U.S.C. § 3006A(e)(3).